IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER DENYING MOTION TO** |
| Plaintiff, | ) | **SUPPRESS** |
| | ) | |
| vs. | ) | |
| | ) | Crim. File No. 2:08-cr-34 |
| Peter James Smith, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is the defendant's motion to suppress the statements made immediately following a January 24, 2008 polygraph examination.  A suppression hearing was held on August 27, 2008.  At the conclusion of the hearing, the Court denied the motion from the bench. This written opinion is intended to be consistent with and supplemental to that oral ruling.

**FACTS**

On January 9, 2008, Agent Michael Thompson interviewed the defendant, Peter James Smith, regarding two alleged incidents of sexual abuse that occurred on the Spirit Lake Indian Reservation.  Smith denied the incidents and agreed to undergo a polygraph examination at some point in the future.

On January 24, 2008, Agent Thompson arranged for the polygraph examination to occur. He contacted Priscilla Robertson, Smith's girlfriend, in an attempt to locate Smith.  Robertson informed Agent Thompson that Smith was at the local community college.  Smith was located and agreed to undergo the examination.  Robertson asked Agent Thompson to drive the two of them to the courthouse.  Agent Thompson agreed and dropped Robertson and Smith off.

1

Smith sat nearest an unlocked door in a conference room of the courthouse during the duration of the polygraph examination and the pre- and post-interviews. Agent Kelly Kenser explained the polygraph process to Smith. He went over an "Advice of Rights" (Exhibit 3) with Smith, which included Smith's <u>Miranda</u> rights, in addition to information such as the voluntariness of the interview and the fact that the doors were unlocked and Smith was free to leave at any time. Smith read part of the form aloud, signed it, and placed his initials next to each right or statement.

Next, Kenser went over a "Consent to Interview With Polygraph" form with Smith (Exhibit 4). Smith was informed that he had the right to refuse or stop the polygraph test or any particular question. Smith read part of the form aloud and signed it.

Smith was given a "practice test" after being connected to the polygraph. The instrument was adjusted and two relevant questions were asked: "Did you insert anything into [B.R.'s] vagina?" and "Did you insert anything into [B.R.'s] anus?" Smith answered "No" to both questions. After Smith was disconnected from the machine, Kenser stated that he believed Smith was not being truthful. Kenser asked if Smith had an explanation for the fact that the answers appeared deceptive. At that point, Smith described an incident in which he awoke to find B.R. inserting his finger into her vagina. Kenser asked, "What about the other incident?" Smith described a second incident in which he awoke to find B.R. inserting two of his fingers into her vagina and rubbing her anus.

After this initial description, Agent Thompson was brought back into the room. Agent Kenser summarized Smith's confession and Smith gave additional detail to both agents. Smith was thanked for his cooperation and left. Less than two hours elapsed from his arrival at the

courthouse until the interview terminated.

At no point did Smith assert any of his rights, decline to answer a question, or ask to leave.

## DISCUSSION

There are essentially two issues raised in this motion. First, was an interview conducted in violation of Miranda? Second, was the interview and confession voluntary?

Miranda violation.

Under Miranda v. Arizona, "an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990); Miranda, 384 U.S. 436, 444 (1966). Statements made by a person in custody, even if wholly voluntary, are inadmissible at trial unless law enforcement officers gave the specific warnings and followed the specific procedures set forth by Miranda. Michigan v. Mosley, 423 U.S. 96, 99-100 (1975).

Here, no violation of Miranda occurred. Initially, it appears to the Court that the defendant was never "in custody." Custody is described as occurring either upon a formal arrest, or under other circumstances in which the defendant's freedom of action is deprived in a significant way. Miranda, 384 U.S. at 444. The Eighth Circuit Court of Appeals has identified six "indicia of custody" in order to help make the determination. Griffin, 922 F.2d at 1349. These indicia include whether the suspect was informed the questioning was voluntary, whether he was restrained, and whether he was arrested upon termination of the questioning. Id. Here, Smith was free to leave, was fully unrestrained, voluntarily acquiesced to the questioning, and

was not arrested when the questioning was completed.  It appears, therefore, that he was never in custody.  More importantly, full Miranda rights were administered both orally and in writing (Exhibit 3).  The defendant acknowledged these rights with his signature and initials.  Additional rights were presented to him in the polygraph consent form.  The meeting with Agents Kenser and Thompson lasted less than two hours.  Under all these circumstances, there is no violation of Miranda.

Voluntariness of the confession.

Consistent with Miranda, Smith was informed of his right against self-incrimination.  A waiver against this privilege is valid if it is made voluntarily, knowingly, and intelligently. United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008).  A "voluntary" waiver is "the product of a free and deliberate choice rather than intimidation, coercion, or deception."  United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006).  A confession is considered involuntary if it is extracted by threats, violence, or direct or implied promises to the extent that the defendant's will is overborne and his capacity for self-determination critically impaired.  United States v. Gannon, 531 F.3d 657, 661 (8th Cir. 2008) (citing United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995).

Here, there are a number of factors that may have influenced Smith to some extent: Smith had agreed to take a polygraph on January 9, 2008, but was not given any advance notice of the January 24, 2008 exam date; He was surprised by Agent Thompson's visit; His girlfriend cooperated with the agents in locating Smith and getting him to the courthouse; Smith was brought to the courthouse by Agent Thompson in his patrol vehicle; and, Smith was told shortly after the conclusion of the polygraph that Agent Kenser believed Smith was being deceptive.

Though all these facts provided some element of surprise and discomfort to Smith, the Court cannot conclude that Smith's will was overborne. Smith is an intelligent person who was enrolled in college. There is no indication Smith was intoxicated, ill, or under the influence of any substance that could affect his susceptibility to pressures. During the entire contact between Smith and the FBI agents, there were no threats, promises, or violence used. The officers did not raise their voices. The interview took less than two hours and Smith was free to leave at any time. Viewing the totality of the circumstances, Smith's discomfort level was comparable to that of any person undergoing an interview relating to such allegations. The officers conducted themselves in a cordial, professional manner. The Court concludes the confession was, therefore, voluntary.

## CONCLUSION

The defendant's motion is hereby **DENIED.**

**IT IS SO ORDERED.**

Dated this 28th day of August, 2008.

/s/     Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court